No. 24-11427

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**
*Appellee,*

**v.**

**JOHN THOMAS,**
*Appellant.*

————————————

On Appeal from the United States District Court
for the Northern District of Florida, Pensacola Division

————————————

**INITIAL BRIEF OF APPELLANT**

————————————

JOSEPH F. DEBELDER
Federal Public Defender

MEGAN SAILLANT
Assistant Federal Public Defender
Florida Bar No. 0042092
101 SE 2nd Place, Suite 112
Gainesville, Florida 32601
Telephone: (352) 373-5823
Email: Megan_Saillant@fd.org
Attorney for Appellant

*United States v. John Thomas*
*Case No. 24-11427*

<u>Certificate of Interested Persons</u>

As required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit

Rule 26.1-2, the following persons have an interest in the outcome of this case:

Bolitho, Zachary C., United States Magistrate Judge

Brooks, Angel, Victim

Bruchard, Brent, Victim

Conway, Daniel, Victim

Coody, Jason, United States Attorney

Davies, Robert, Assistant United States Attorney

DeBelder, Joseph, Federal Public Defender

Etherton, Jessica S., Assistant United States Attorney

Garcia, Julie V., Victim

Harris, Kim, Victim

Hodges, Raishon, Victim

McDonald, Alicia, Victim

Nguyen, Tien, Victim

Rodriguez, Juan J., Assistant Federal Public Defender

Schrady, Jeremy, Victim

Thomas, John W., Defendant/Appellant

Tran, Ha, Victim

Wetherell, T. Kent, United States District Judge

Williams, Antonio, Victim

Zanders, Leonard, Victim

## Statement Regarding Oral Argument

Mr. Thomas respectfully submits that oral argument is necessary for the just resolution of this appeal.

## Table of Contents

Certificate of Interested Persons ........................................................................ *C1 of 2*

Statement Regarding Oral Argument ........................................................................i

Table of Authorities ............................................................................................iii

Statement Regarding Jurisdiction...........................................................................1

Statement of the Issue............................................................................................2

Statement of the Case ............................................................................................3

    I.      Course of the Proceedings..........................................................................3

    II.     Statement of the Facts ...............................................................................4

    III.    Standard of Review ................................................................................. 12

Summary of the Argument................................................................................... 14

Argument.............................................................................................................. 15

    There was not a reasonable articulable suspicion that Mr. Thomas
    committed, or was about to commit, a crime and therefore his
    detention violated the Fourth Amendment ................................................ 15

Conclusion........................................................................................................... 19

Certificate of Compliance ....................................................................................20

Certificate of Service............................................................................................20

Table of Authorities

## Cases

*Bradley v. Benton*,
   10 F.4th 1232 (11th Cir. 2021) .............................................................. 15

*Deno v. State*,
   230 So.3d 611 (Fla. 2d DCA 2017) ...................................................... 16

*Illinois v. Wardlow*,
   528 U.S. 119 (2000) .............................................................................. 15

*\*Prouse v. Delaware,*
   440 U.S. 648 (1979) ....................................................................... 18, 19

*\*Terry v. Ohio,*
   392 U.S. 1 (1968) .................................................................................. 15

*United States v. Campbell,*
   26 F.4th 860 (11th Cir. 2022) .............................................................. 18

*United States v. Gonzlaez-Zea*,
   995 F.3d 1297 (11th Cir. 2021) ...................................................... 13, 15

*United States v. Sokolow,*
   490 U.S. 1 (1989) ................................................................................. 15

*\*United States v. Spoerke,*
   568 F.3d 1236 (11th Cir. 2009) ...................................................... 12, 17

*United States v. Strickland,*
   902 F.3d 937 (11th Cir. 1990) .............................................................. 18

*United States v Cooper,*
   133 F.3d 1394 (11th Cir. 1998) ........................................................... 18

Table of Authorities – *cont'd*

**Statutes**

*Fla. Stat. § 403.413(6)(a)(1) ...................................................................................... 16

*Fla. Stat. § 901.151 ............................................................................................. 15, 16

Statement Regarding Jurisdiction

The United States District Court for the Northern District of Florida, Pensacola Division, had jurisdiction over the federal criminal charges against Mr. Thomas. The court sentenced Mr. Thomas on April 18, 2024, and a written judgement was entered four days later.[1] (Footnotes in this brief contain only references to the relevant supporting documents and page numbers.) Mr. Thomas filed a timely notice of appeal on April 23, 2024.[2] This Court has jurisdiction over his appeal pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

---

[1] ECFs 54; 55.

[2] ECF 58.

<u>Statement of the Issue</u>

There was not a reasonable articulable suspicion that Mr. Thomas committed, or was about to commit, a crime and therefore his detention violated the Fourth Amendment.

Statement of the Case

I.    Course of the Proceedings

Mr. Thomas entered a plea of guilty to the following offenses:

| Count 1 | Unlawful Possession of a Means of Identification | 18 U.S.C. §§ 1028(a)(7) and 1028(b)(2)(B) |
|---------|--------------------------------------------------|-------------------------------------------|
| Count 2 | Fraudulent Use of Fifteen or More Unauthorized Access Devices | 18 U.S.C. §§ 1029(a)(3) and 1029(c)(1)(A)(i) |
| Count 4 | Theft of Mail | 18 U.S.C. § 1708 |
| Count 5 | Possession with Intent to Distribute 50 Grams or More of a Mixture Containing Methamphetamine | 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii)[3] |

On count 5 Mr. Thomas faced a mandatory minimum of five years.[4] Mr. Thomas reserved his right to appeal the district court's denial of his motion to suppress as a condition of the plea agreement.[5]

The district court sentenced Mr. Thomas to a total of 212 months' imprisonment.[6] He received 60 months on Counts 1 and 4, 120 months on Count 2, and 212 months on Count 5.[7] Each sentence was to run concurrently, and his federal sentence was ordered to run concurrently with any sentence he might receive in his related state case.[8]

---

[3] ECF 55.
[4] ECF 43 at 2.
[5] *Id.* at 3.
[6] ECF 55 at 2.
[7] *Id.*
[8] *Id.*

Mr. Thomas is currently incarcerated.

## II.    <u>Statement of the Facts</u>

In broad daylight on January 31, 2023, an employee of McDonald's called police to report that two occupants of a grey Acura were littering in the parking lot.[9] Eleven minutes later, Officer Kaiser responded to the scene and encountered the Acura.[10] He approached the driver's side window of the vehicle and informed Mr. Thomas that he had received a call from McDonald's stating he was throwing trash out of his car.[11] Mr. Thomas explained that while travelling on interstate I-10, he had spilled some ice cream and pulled into the McDonald's parking lot to clean it up.[12] Realizing the potential misunderstanding, Mr. Thomas got out of the vehicle and placed the ice cream cup he'd been using to scoop up the ice cream in the trash dumpster.[13] After Mr. Thomas returned to his vehicle, Kaiser called dispatch to ask them to run the license plate on the Acura.[14] He also asked Mr. Thomas for his identification.[15] The dispatcher could not locate a matching license plate in the database.[16]

---

[9] ECF 27-1 (McDonald's Surveillance Video, dated January 31, 2023), at 3:03:08 PM.
[10] *Id.* at 3:14:00 PM.
[11] *Id.* at 3:15:26 PM.
[12] ECF 27 at 1-2.
[13] *Id.*
[14] ECF 27-1 at 3:17:37 PM.
[15] ECF 27 at 2.
[16] ECF 27-1 at 3:17:45 PM.

Mr. Thomas's passenger, Amanda Breax, returned from the store next door.[17] Kaiser asked Breax for her identification.[18] She was carrying a small glasses case and Kaiser he asked her if he could look inside.[19] She refused, but upon Kaiser's further insistence, she relented, opening the case to reveal a couple of needles but no drugs.[20] Kaiser was then advised by dispatch that Breax's identification was fake.[21] Kaiser advised Breax she was being detained, and ordered her to move to the front of his patrol vehicle.[22] At one point Breax temporarily got up from her seated position on the curb.[23] Kaiser immediately ordered Breax to sit down indicating: "sit down; if you get up again, I'm going to put you in cuffs; stop playing with me[…] if you get up again, you are going in cuffs, ok?"[24]

At this time, Officer Kaiser was unsure whether he had received a false identification from Mr. Thomas.[25] He asks dispatch "whether [Mr. Thomas] gave me a false



---

[17] *Id.* at 3:23:15 PM.
[18] ECF 27 at 2.
[19] *Id.*
[20] *Id.*
[21] ECF 27-1 at 3:27:20 PM
[22] *Id.* at 3:27:13 PM.
[23] *Id.* at 3:30:38 PM.
[24] *Id.* at 3:30:40 PM.
[25] *Id.* at 3:30:40 PM.

id[?]"[26]  Kaiser requests backup and again tells Breax: "if you get up, I'm going to put you in cuffs."[27]

Kaiser goes back to Mr. Thomas's car where the driver's side door is open.[28] Kaiser ordered Mr. Thomas to "come on out" and proceeds to grab him.[29]  The following exchange then took place:

| | |
|---|---|
| **Kaiser:** | You're going in handcuffs; do you want to get tazed? |
| **Thomas:** | I didn't even do nothing to you, what the fuck are you…? |
| **Kaiser:** | You are going in handcuffs, turn around |
| **Thomas:** | Sir, I didn't even do nothing to you for you to be… |
| **Kaiser:** | Turn around |
| **Thomas:** | For what? Sir, I have not done anything |
| **Kaiser:** | Because you're being detained because you lied to me |
| **Thomas:** | Lied about what? |
| **Kaiser:** | Your name, there's another ID |
| **Thomas:** | Get off me bro, I ain't do nothing to you.  I ain't do nothing to you for you to be doing that. |
| **Kaiser:** | You know what? |
| **Thomas:** | What? |
| **Kaiser:** | You're reaching.[30] |
| **Thomas:** | I ain't reaching for nothing |
| **Kaiser:** | Put your hands in the air.  Put your hands on your head |
| **Thomas:** | Why? |
| **Kaiser:** | Cause' I told you to. |
| **Thomas:** | I haven't done nothing to you for you to be slip[*unintelligible*]…for you to be telling me to put my hands on my head |
| **Kaiser:** | You're lying to me |
| **Thomas:** | I ain't lying to you, man |
| **Kaiser:** | You are lying to me |

---

[26] *Id.*
[27] *Id.* at 3:31:48 PM.
[28] *Id.* at 3:31:58 PM.
[29] *Id.* at 3:31:59 PM.
[30] *Id.* at 3:32:00 PM.

**Thomas:**  *Unintelligible*…you come over here to be fucking with me, man
**Kaiser:**    Don't move, don't move[31]

Immediately after, Officer Kaiser
calmly walks back to his patrol vehicle
while still in communication with
dispatch.[32] Mr. Thomas had not moved the



car.[33]  Kaiser opened the trunk of his patrol
vehicle, rummages around and retrieves a
taser.[34]  Dispatch asks: "were you able to
detain him?"[35]  Kaiser responds: "not yet,



working on it."[36]  Kaiser then closes the trunk and walks back pointing the taser at
Mr. Thomas.[37]  Kaiser orders Mr. Thomas to "stop."[38]  Again, Mr. Thomas has
not moved.[39]



---

[31] *Id.* at 3:32 PM.
[32] *Id.* at 3:32:47 PM.
[33] *Id.* at 3:33:13 PM
[34] *Id.*
[35] *Id.* at 3:33:14 PM.
[36] *Id.*
[37] *Id.* at 3:33:25 PM.
[38] *Id.* at 3:33:29 PM.
[39] *Id.* at 3:33:26 PM.

Mr. Thomas, fearing imminent physical harm, closes the driver's door.[40] However, the driver's side window is partially down a few inches.[41]  Kaiser is



still pointing his taser directly at Mr. Thomas.[42]  Kaiser orders him to open the door, walks up to the driver's side and deploys his taser.[43]  Mr. Thomas pepper sprays Kaiser through the window in self defense.[44]

While the taser is still activated, Kaiser backs away from the car, maintaining a safe distance from the vehicle.[45]  He orders Mr. Thomas to stop.[46]  Then, Officer Kaiser pulls out his service weapon and aims it right at the driver's side of the car.[47]

Mr. Thomas, seeing the gun pointed at him, starts backing away.[48]  Without warning, Officer Kaiser fires two shots at the Acura, one through the driver's side



---

[40] *Id.*
[41] ECF 27 at 5.
[42] *Id.*
[43] ECF 27-1 at 3:33:29 PM.
[44] *Id.* at 3:33:31 PM.
[45] *Id.* at 3:33:32 PM.
[46] *Id.* at 3:33:34 PM.
[47] *Id.* at 3:33:35 PM.
[48] *Id.*

window and another through the windshield.[49]

Having been shot at twice, Mr. Thomas briefly stops the car.[50]  He sees the

bullet hole in the windshield and his smashed

passenger window.[51] Determined to get to

safety, Mr. Thomas continues backing up and

leaves the scene.[52]



The above facts were captured on the surveillance video from McDonald's.[53]

Kaiser was not wearing a body camera and the only audio available for review is

what Kaiser said while on an active line with dispatch.[54]

Mr. Thomas's car was later abandoned nearby.[55] Law enforcement located

the vehicle and Mr. Thomas, placing him under arrest.[56] Investigator Daniel Eddy

of the Walton County Sheriff's Office applied for a warrant to search the car.[57]

Eddy alleged he was investigating charges of battery on a law enforcement officer

and giving a false identification to law enforcement.[58] The proposed probable cause

---

[49] *Id.* at 3:33:36 PM.
[50] *Id.* at 3:33:37 PM.
[51] ECF 27 at 6.
[52] *Id.* at 6.
[53] *Id.* at fn 1.
[54] *Id.* at fn 15.
[55] ECF 52 at ¶ 18.
[56] *Id.*
[57] ECF 27-2.
[58] *Id.* at 5.

was based on Kaiser's recitation of the facts surrounding the illegal detention.[59]
The warrant was granted, and Mr. Thomas's car was searched.[60] In the car law
enforcement discovered contraband forming the basis for the instant prosecution. [61]

Mr. Thomas filed a motion to suppress all evidence discovered during his
illegal detention and the subsequent search warrant.[62] Mr. Thomas argued his
detention in the parking lot was illegal because there was no suspicion of criminal
activity to support the detention or the request for his identification. Therefore,
any evidence or facts gathered during the stop were illegally obtained and could not
be the basis for a future search warrant.

The government responded to Mr. Thomas's motion, lodging four claims
they insisted rendered the stop and subsequent search valid.[63] First, the
government asserted any detention of Mr. Thomas was not illegal.[64] Officer Kaiser
was justified in detaining Mr. Thomas based on the littering allegation.[65]
Furthermore, Kaiser was justified in asking for Mr. Thomas's identification, and
doing so did not turn the stop into a seizure.[66] As an aside, the government also

---

[59] *Id.* at 2.
[60] ECF 52 at ¶ 18.
[61] *Id.* at ¶¶ 18-20.
[62] ECF 27.
[63] ECF 31.
[64] *Id.* at 4.
[65] *Id.* at 5.
[66] *Id.*

alleged Mr. Thomas did not believe he was detained because at one point Mr. Thomas exited the vehicle to throw away the garbage he allegedly littered.[67]

Next the government claimed Kaiser had probable cause to conduct a warrantless search of the vehicle.[68] Because Mr. Thomas and his passenger both provided Kaiser with manufactured fake ids, and Mr. Thomas maced Kaiser from the car, there was probable cause that there was evidence of a crime or contraband inside the vehicle.[69]

The government also argued the warrant was valid as there was requisite probable cause to support it.[70] In support it recited the facts as the occurred in the parking lot of the McDonald's and subsequent interviews with Breax and Mr. Thomas.[71] Finally the government claimed that even if there was not probable cause for the warrant, the "affiant acted in good faith" and therefore none of the evidence seized as a result of the warrant should be excluded.[72]

The district court denied the motion to suppress without a hearing, noting "the events described in the motion were captured on a surveillance video ... and

---

[67] *Id.* at 6.
[68] *Id.*
[69] *Id.* at 8.
[70] *Id.* at 9.
[71] *Id.* at 9-12
[72] *Id.* at 12.

the facts summarized below are not in dispute."[73] The court concluded Mr.

Thomas was detained and the detention was a lawful investigatory stop based on

the littering complaint.[74] In support, the court cited *United States v. Spoerke,* 568

F.3d 1236 (11th Cir. 2009), as holding a littering complaint is a valid reason for a

lawful detention.[75] During the detention, Kaiser had the authority to ask for Mr.

Thomas's identification and Mr. Thomas was required to provide it.[76] The false

identification was sufficient to establish probable cause for a search warrant of Mr.

Thomas's car and therefore, anything discovered as a result of the warrant was

admissible.[77]

    Mr. Thomas pled guilty to Counts 1, 2, 4, and 5, and reserved his right to

appeal the denial of his motion to suppress.[78]

## III.   Standard of Review

    "Because rulings on motions to suppress involve mixed questions of fact and

law, [this Court] review[s] the district court's factual findings for clear error and its

application of the law to the facts *de novo*. [This Court] construe[s] the facts in the

light most favorable to the party that prevailed below, here, the government."

---

[73] ECF 32.
[74] *Id*. at 2.
[75] *Id*. at 2.
[76] *Id*. at 2-3.
[77] *Id*.
[78] ECF 43 at 3.

*United States v. Gonzlaez-Zea*, 995 F.3d 1297, 1301 (11th Cir. 2021) (quotation omitted).

<u>Summary of the Argument</u>

Mr. Thomas was illegally detained when Officer Kaiser asked for his identification. Kaiser did not have an articulable suspicion that Mr. Thomas had engaged in, or was about to, any criminal behavior. Kaiser only knew that Mr. Thomas had been accused – mistakenly – of littering on private property, a violation of a civil ordinance.

Mr. Thomas calmly and reasonably explained he was not littering – the garbage was on the ground next to him because he was cleaning out his car. He quickly disposed of the trash at that time. Once the civil infraction was resolved, Kaiser had no justification for further detaining Mr. Thomas. Anything discovered after, and as a result of, the illegal detention should have been suppressed by the district court.

14

<u>Argument</u>

There was not a reasonable articulable suspicion that Mr. Thomas committed, or was about to commit, a crime and therefore his detention violated the Fourth Amendment.

Mr. Thomas renews his argument below: he was illegally detained for a noncriminal infraction in violation of the Fourth Amendment. Thus, the warrant obtained based on information acquired during that illegal stop was invalid. All evidence and statements obtained during the stop and as a result of the search warrant should have been suppressed.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), "an officer may 'conduct a brief, investigatory stop when the officer has reasonable, articulable suspicion that **criminal** activity is afoot.'" *Bradley v. Benton*, 10 F.4th 1232, 1239 (11th Cir. 2021) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (emphasis added)); *see Terry*, 392 U.S. at 30. In other words, an officer may stop an individual only if the officer has a reasonable, articulable suspicion that the individual had just committed a **crime**, was in the process of committing a **crime**, or was about to commit a **crime**. *Gonzalez-Zea*, 995 F.3d 1297, 1302 (11th Cir. 2021). "The Fourth Amendment requires some minimal level of objective justification for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quotation omitted).

Florida's Stop and Frisk law lays out a similar standard under state law. *See* Fla. Stat. § 901.151. An officer "may temporarily detain [a] person for the purpose

15

of ascertaining the[ir] identity." *Id.* A stop and request for one's identification are legal only if the officer believes the person "is committing, or is about to commit a violation of **criminal** laws … or … **criminal** ordinances[.]" Fla. Stat. § 901.151(2) (emphasis added). *See, e.g., Deno v. State,* 230 So.3d 611 (Fla. 2d DCA 2017) (person is required to produce their identification when requested during a **lawful** detention or arrest).

Florida's Litter Law is codified in the "Public Health" chapters of the Florida statutes. Discarding trash on private property without permission is a noncriminal infraction which can result in a $150 fine. Fla. Stat. § 403.413(6)(a)(1). (There are circumstances in which littering can be a criminal offense, but none of those apply here.) Because there was no suspicion of **criminal** activity in the instant case, the detention and request for Mr. Thomas's identification was illegal.

When the McDonald's employee called dispatch, she reported only that there was a car parked in the parking lot and the people inside appeared to be littering. There were no allegations of criminal activity or any perceived threat of criminal activity. This was the only information Kaiser had when he arrived on the scene and approached Mr. Thomas's car. Mr. Thomas had not abandoned any garbage in the parking lot when Kaiser arrived.

16

When Kaiser asked Mr. Thomas about the littering allegation, Mr. Thomas gave a reasonable explanation for why he had not yet picked up the trash on the ground. He was in the process of cleaning his car and had not taken the garbage to a bin yet. At that point Mr. Thomas exited his car and threw the garbage away in a nearby dumpster. When he returned to his car, despite the explanation and proper disposal of the trash, it was clear Mr. Thomas was not free to leave. Kaiser asked for his identification.

According to the district court this detention was "lawful" because Kaiser was investigating a littering complaint. In support, the district court cited to *United States v. Spoerke,* 568 F.3d 1236 (11th Cir. 2009). In *Spoerke,* an officer conducted a traffic stop when he saw what he believed to be litter tossed from a moving car. *Id.* at 1241. While speaking with the defendant and his passengers the officer observed suspicious materials in the car and asked the occupants to exit the vehicle. *Id.* at 1241. A subsequent search revealed a plethora of contraband in the truck. *Id.* at 1241-42. The defendant moved to suppress any evidence discovered after the stop because, he claimed, there was insufficient probable cause to support the initial stop. *Id.* at 1248. This Court affirmed the lower court's denial, holding the officer "had probable cause, based on the littering violation, to stop the vehicle." *Id.*

17

The Court in *Spoerke* was correct of course, law enforcement "may stop a **vehicle** when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of a motor vehicle." *United States v. Strickland,* 902 F.3d 937, 940 (11th Cir. 1990) (emphasis added). But a **civil** littering infraction committed from a legally parked car on private property is not comparable to these scenarios. Littering is not a "regulation relating to the operation of a motor vehicle." *Id.* Littering from a parked car also does not present any imminent safety concerns that would justify detention by law enforcement. *See, e.g., Prouse v. Delaware,* 440 U.S. 648, 658 (1979) (stops for traffic violations are permissible because "States have a vital interest" in "promoting public safety upon its roads[.]"). This was a *Terry* stop, not a traffic stop.

Even if the encounter between Kaiser and Mr. Thomas were to be construed as a traffic stop, it still was not supported by the requisite reasonable suspicion of criminal activity or a traffic violation. *See, e.g., United States v. Campbell,* 26 F.4th 860, 869 (11th Cir. 2022) (probable cause existed for stop where defendant's taillight was blinking rapidly in violation of a Georgia traffic ordinance); *United States v Cooper,* 133 F.3d 1394 (11th Cir. 1998) (probable cause for stop existed where officer witnessed car merge lanes dangerously). There was no "traffic

18

violation" here. Littering is a noncriminal civil infraction. And, because the alleged infraction was from a parked car, there were no safety concerns. *Prouse,* 440 U.S. at 658 (1979).

Because littering is neither a "traffic infraction" or a crime under Florida law, any detention of Mr. Thomas was unsupported by reasonable suspicion. The stop of Mr. Thomas was illegal, as was the order for his identification. Everything discovered as a result of that encounter should have been suppressed.

<u>Conclusion</u>

Based on the argument and authority presented above, Mr. Thomas respectfully asks the Court to reverse the district court's denial of his motion to suppress and remand the case for further proceedings.

Respectfully submitted,

JOSEPH F. DEBELDER
Federal Public Defender

*Megan Saillant*
MEGAN SAILLANT
Assistant Federal Public Defender
Florida Bar No. 0042092
101 SE 2nd Place, Suite 112
Gainesville, Florida 32601
Telephone: (352) 373-5823
Email: Megan_Saillant@fd.org
Attorney for Appellant

<u>Certificate of Compliance</u>

     1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,837 words.

     2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Word 2016 in Equity A, 14 point.

<u>Certificate of Service</u>

     I certify that a copy of the foregoing has been furnished electronically in Acrobat format by Internet upload to this Court and to Assistant United States Attorney Robert Davies; and by U.S. Mail to John Wayne Thomas, c/o Walton County Jail, 40 Sheriff Circle, DeFuniak Springs, FL 32433, on this 4th day of October 2024.

*Megan Saillant*

Megan Saillant
Attorney for Appellant